Spentner v. Palestine Investment Bank Mr. Radeen, whenever you're ready. Thank you, Your Honour. Good morning, and may it please the Court. I'm Michael Radeen for Plaintiffs. This case is about whether a foreign bank conducting the same type of transactions in New York as was sufficient for jurisdiction in Lychee can circumvent that jurisdiction through the simple expediency of using a nesting account at another bank and then directing that bank to process the transactions in New York. Nested accounts are a recognized vulnerability in the U.S. dollar clearing system and defendant used one to willfully direct dozens if not hundreds of U.S. dollar transactions through New York for Saddam Hussein's ALF and Hamas's HLF. This is the same conduct as in Lychee. Indeed, the lower court here found that the parties, this is a quote, do not appear to dispute that if PIB maintained and used its own correspondent account in New York for the relevant transactions, jurisdiction would lie. But isn't that, Mr. Radeen, isn't that a significant, you're kind of jumping over a distinction here, what the Lychee cases looked at were correspondent banks and they recognized that, yes, that kind of contact in New York was sufficient for jurisdiction. This is a step removed from that. And I don't believe there are cases either from this circuit or from the New York Court of Appeals that have applied, that have found jurisdiction for a nested bank account as opposed to the bank that actually has the correspondent account in New York. That's true, Your Honor. We haven't seen a case on that. Although we don't think that Lychee treats the maintenance of the account in your own name as part of the contacts. In fact, both the New York Court of Appeals and this court's Lychee cases repeatedly refer to the use of a correspondent bank. The flip side is that Lychee can be avoided altogether simply by opening a nested account. Right, so Lychee focuses on the use and not the maintenance. So it does seem like it's not that important who signed the paperwork to open the account. So then the question is can Palestine Investment Bank be understood as the party that used the account? I guess the argument is no. Arab Jordan Investment Bank is the party that's used the account. So I guess why should we conclude that it is PIB that is purposefully using the correspondent account in New York? Well, PIB, in fact, is affirmatively directing the transfers to New York. As their declarant said in his declaration, they would, quote, instruct Egypt to make payment to banks in the United States. And those banks are the counterparty banks. So if a transfer is going out, for instance, to settle a check that Saddam Hussein issued through the Palestine Monetary Authority, then PIB is instructing Egypt to make payment to Arab Bank New York, which is the New York correspondent account. So the argument is that Palestine Investment Bank is using the correspondent account through an agent? Yeah, through an agent. Does it require agency? Sorry, Your Honor? Does it require actual agency in the sense of control that is in the case law? I don't think it does. I think that if PIB is reaching New York through an intermediary, it doesn't require it, such as if in Chloe you're shipping goods to New York, I don't think that the shipper has to be your agent necessarily. The point is that you're making the decision to purposely avail yourself of that jurisdiction. Although we think under an agency theory the same result applies. In National Union Fire, Judge Lynch explained. Well, we said the agency is just the agent is acting for the benefit of the principal and is subject to some control by the principal. So are those standards met here? Yes, Your Honor. As Judge Lynch explained, some control even includes delegating the decision of a jurisdiction to another party and then ratifying it by continuing in that relationship. But isn't there even more control here? So when Palestine Investment Bank says transfer $200 from, you know, to the PMAs, so like there's some transaction, PIB owes a debit of $200 and instructs AGIB to transfer $200 to the PMA's correspondent account in New York. Can AGIB transfer $500? No, Your Honor. It must follow the instructions that PIB gave it. But is PIB in a position, I mean, with regard to the transactions related to the PMA, to say that that's control when PIB is required by PMA to route those transactions through New York, it doesn't seem like a, it's not accurate to describe PIB as controlling those transactions when they are required by another entity to route those transactions through New York. It's true, Your Honor, that PIB as a bank of the Palestinian territories follows the PMA's check clearing system. The choice it makes there is the choice to offer a U.S. dollar-denominated checking account to Saddam Hussein and to Hamas's HLF. Let me ask you that then. I think that's really a critical point or something I'm struggling with. You mentioned that they're making a choice to use U.S. dollar-denominated transactions. It seems like your position is that any institution that engages in U.S. dollar-denominated transactions is subject to jurisdiction in New York. Because if the reality is 95% of those transactions have to go through New York, the choice that's being made here is, is your position that if you choose to transact in U.S. dollars, you're subject to jurisdiction in New York State? Well, only if the claim would arise from the transaction itself, which generally does not. So the bank made the choice to offer a dollar account in a jurisdiction that doesn't use dollars to extremely high-risk customers. And it not only could have made the choice not to do that, it could have rejected any of the transfers as an Amigo Foods, where the bank escapes jurisdiction because it says to an incoming transaction, I don't want it. Would it even be a weird result? So if, in fact, a bank decides to offer the service of allowing customers to maintain dollar-denominated accounts and to do dollar-denominated transfers between banks, wouldn't they? And with knowledge that 95% of dollar-denominated transactions are cleared through New York, wouldn't they understand that they're going to touch New York's jurisdiction? Yes, Your Honor. The fact that the system exists before they started operating in it doesn't change the fact that they chose to then participate in it, which they're not required to do. And then this point about whether they're required to go to New York because of the PMA's clearing system. I mean, isn't that why all foreign banks have correspondent accounts in New York, because it has to be cleared through chips or some clearing function? So if the fact that it was a requirement of doing dollar-denominated transactions, if the fact that it's a requirement meant that it wasn't purposeful availment, wouldn't that mean that even the use of a bank's own correspondent account shouldn't subject it to jurisdiction? That's right. It would effectively undo Lychee itself. As Judge Garcia said in his concurrence in Al Rashid, where he points out that it does not, or the whole decision points out that it doesn't matter that these decisions are made ultimately by someone else. He says if this is a chilling effect on terror financing or other criminal conduct being run through the United States, then so be it. It would have been possible for PIB to have achieved the same thing elsewhere through another banking system or through a European bank without designating or knowing that it was going to be, without actually caring whether it was going to be in New York or not, as long as it got dollars back. There are limited means to do that, Your Honor. I guess what I'm suggesting is that involved a choice on the part of PIB to use a bank, and correct me if I'm wrong on this fact, that it knew had a correspondent account in New York. Right. Well, what it could have done for the checking, for instance, is required all check recipients to open accounts at PIB, and then those dollar checks would clear on its own books. Yeah. But it didn't make that choice. It chose to participate in the dollar clearing system through New York. It could have also gone to the expense of dealing with one of these check clearing systems that's in Singapore or one of the other, like some of the other 5% of transactions, I guess, that occur outside of New York, right? Yes, Your Honor. What would that have required? I assume it would have been more expensive, and I guess those deal in more limited volume, but it would have been possible. Right, or keep U.S. bank notes on hand and just settle every transaction itself. I'm sorry. Is it actually possible that PIB could have participated in one of those 5%? I mean, I thought those were primarily limited Asian markets. I mean, as a reality, they have to go through the PMA. So, in fact, I mean, do they actually even have that as an option? And I guess sort of that factual question is the first part. But then the second part is it goes back to this idea that the purposeful choice that's being made is U.S. dollars and not necessarily New York. And so it does seem like, and I don't know if you addressed this exactly before, that you are saying that essentially any institution that transacts in U.S. dollars, regardless of whether they have a correspondent bank in New York, is subject to New York jurisdiction. There are other systems that are smaller systems. I think that in the Palestinian territories, if you're participating in dollar clearing, then you know that that will be because of the PMA, and you're not requiring that checks be cleared on your own books. What is your allegation as far as PIB's knowledge of the banking transaction in New York? They didn't know who the actual correspondent banks were in New York, right? Oh, they did. They knew on both sides of the transaction. That's right. There was one letter from the Bank of New York, right? But it's even more specific than that. So first of all, when PIB opens its nesting account at AGIB, AGIB advertises its correspondent accounts in New York. It's how it gets customers like PIB to open accounts there. On the other side, PIB is telling AGIB the name of the New York correspondent bank on the beneficiary side in order to route the transactions. It's saying, AGIB, please send this to Arab Bank New York, care of, or for further credit, the PMA's accounts. So it knows the specific accounts on both sides of the transaction. In fact, I mean, anybody doing dollar transactions in the Palestinian territories would know that the money would have to go to the PMA's account in New York. Any bank would know that if they want the checks to be depositable at other banks in the territories. I mean, there's a suggestion that the PIB was indifferent as to whether AGIB was using a correspondent account in New York or some other place. Does that matter? No, well, they weren't indifferent.  We're enjoying the convenience and cost savings of doing it through New York. But also, if you think about the incoming transactions from HLF, which the lower court accepted, for instance, very well may have been directed by PIB, HLF's accounts are in the United States. It's a Richardson, Texas entity, and its Bank One has its correspondent bank in New York City. There's no way to teleport the money from HLF in New York City. You know, I understand. That's how they, that's receiving money from HLF. But just for the time being, let's say we're talking about the ALF transactions, where there's a check between PIB and another Palestinian bank that's cleared, and then so the thing has to be cleared back in the New York correspondent accounts. So for that kind of system, does it matter that PIB says to AGIB, look, we need to clear this transaction, and we rely on you to get that done, but we don't care if you do it in New York or any other place. We know that PIB does care because they're naming the New York counterparty for the PMA on the other side of the transaction. But does it need to care? I mean, I guess you suggested that they know that it's happening in New York. If they know it's happening, right, Your Honor, then they've bought into that system and continue to participate in it. At any point, they could cut off. And so do we know that they know? Yes. And the reason we know that they know is because of what's advertised in the Bankers' Almanac and also just the relationship with AGIB, I guess. Same chairman of the two banks. I think the banks probably know each other well. And even if AGIB decided to not have a correspondent account in New York, maybe that means they couldn't clear transactions, so they couldn't provide the service. But in any event, the money would have to be transferred to the PMA's correspondent account in New York, so there's going to be a connection to New York. Right. Short, again, of AGIB shipping bank notes to the PMA. Can I ask you about the Holy Land Foundation transactions? So you say that the Holy Land Foundation was instructed to deposit money into the AGIB correspondent account in New York. Is that the basis for personal jurisdiction for all the claims related to Hamas? Or is there also an argument that on the back end, when the Holy Land Foundation wrote checks off their PIB account or whatever, it goes through the same clearing process? Because you don't have allegations about what happens on the other end, right? Right. We know that HLF was designated by Israel for making martyrdom payments. I don't know that we have at this stage allegations that martyrdom payments for HLF were made through PIB. So does the jurisdiction, personal jurisdiction for those claims, depend on the inference that PIB provided instructions to HLF in New York? Or is there an inference that the check clearing process that works for the ALF payments would also work for those payments? On the former, on the fact that PIB is receiving money from HLF, knowing that it's customer, it was HLF that's customer in the Palestinian territories, is an Israeli-designated terrorist financing group, and knowing, and we believe in fact instructing, that the transactions are coming through New York. So the deployment of the New York market in those cases is the instruction that's provided to give it to the correspondent account in New York. Yes, but also the knowledge. In Lychee, LCB is largely receiving, those are donations coming in to Shaheed, Hezbollah's charity in Lebanon. But is it the case with regard to HLF, part of, aside from the context, it's the context in New York are rising out of the claims. Are you making, are there any claims that you're pleading with regard to HLF related to the incidents in this particular lawsuit, or the particular martyr payments here, or what have you? What is the nature of the HLF, how does that connect to your actual claims? We claim that just as the financing, the financial transactions for Shaheed and LCB were not so unmoored to the Hezbollah attacks in that case, the same is true here. So money coming in for HLF, which is a Hamas fundraiser. It's just an analogy though, it doesn't relate to, the HLF claim does not go to your specific claims that are being pleaded in your complaint. It does, it's financing Hamas, which is responsible for some of the attacks at issue. ALF has sort of the broader responsibility. So you're saying because we know the Holy Land Foundation is providing funding to Hamas and Hamas is sponsoring the terrorism, then the money that PIB was getting from Holy Land Foundation was going to sponsor terrorism. Right. And so the allegations about the instruction to transfer to the New York account, that's for purpose of establishing jurisdiction. But that transaction of the Holy Land Foundation sending money to PIB is related to the claim because that money ended up sponsoring terrorism. That's right, Your Honor. Do you need to know, I mean, do you need to have particular allegations? I mean, for the other claims, for the ALF claims, you have these checks that show the actual payments to individual terrorists. You don't have that for Hamas. Do you need that? No, Your Honor. So in Kaplan, which is now the merit side of Lychee, the main entity at issue is Shaheed, which is sort of Hezbollah's version, let's say, of HLF. That case survived in the merits. There's no allegation that Martyrs Foundation, Shaheed, was making suicide payments to the attackers. In fact, the attackers were firing rockets over the Lebanese-Israeli border. It's simply that the bank was knowingly financing the entity that was closely intertwined with Hezbollah's violent activities. It's just as true of HLF, which provides the same function that Shaheed does for Hamas, that Shaheed does for Hezbollah. And for ALF, it's incentivizing those terrorist attacks. We don't have to show that the ALF paid a check to a particular terrorist because that terrorist has already made the decision by the time a check gets cut to engage in an attack. Our allegation is that ALF is incentivizing that person to carry out that attack. That's my time, Your Honor. Okay, thank you, Mr. Radin. You've reserved some time for rebuttal, so we'll hear from you again. Let's turn to the appellee, Mr. Berger. Good morning, and may it please the Court, Mitchell Berger for Palestine Investment Bank. There are at least four prior decisions of this Court, plus four provisions of the New York UCC that foreclose Plaintiff's Theory of Jurisdiction. Judge Lee, Judge Menashe, you both asked this question. Leachy itself addresses this scenario. Leachy said that when a foreign bank chooses to do business in New York, when it has options elsewhere, then it's subject to jurisdiction. And then it gave an example of what an option elsewhere that would be that would be exempt from jurisdiction. In doing so, it cited to the district court's decision in the Tamam case, and you can find this at 732 F. 3rd at 171. This court said in Leachy, they could, for example, have used a dollar correspondent account with a bank in Jordan, which they had. That is this case. PIB chose to use its dollar correspondent account with a bank in Jordan. I mean, does the case really depend on this? So it seems like, given the record in this case, it's not obvious whether this is right, that you could maintain correspondent accounts anywhere in the world and still do dollar-denominated transactions. But, you know, Leachy says purposeful use of a correspondent account in New York is enough for personal jurisdiction. Why does it matter that it could have been somewhere else? Because it could have been, I mean, even if you had a binary choice, either purposefully use a correspondent account in New York or don't. Why wouldn't that be enough for jurisdiction? There's nothing about the language of the New York long-arm statute that says whether there's business transacted in New York that requires there to be other options to accomplish the same result in another jurisdiction, is there? Well, Your Honor, respectfully, I disagree with about three embedded premises in that question, so let me try to address each. The New York long-arm statute says an action by a defendant either in person, meaning on its own or through an agent. So now what we're dealing with is a nested account, something in person. And we know the answer to that from Leachy is no, because at least three times in the Leachy-Ford decision, 732 F. 3rd at 168 and at 169, the court added to Your Honor's question to me an additional fact, that it's not just purposeful use of an account. It has to be personal, I'm sorry, it has to be purposeful use of the bank's own account. And that makes sense. Why? Because 302A1, which is what this case is about. So this is essentially, I mean, the broad picture here is that this is a roadmap for terrorists. If they want to get funding and get dollars, they just do what PIB did, under your theory, and they're home free. It's not a question of owning the correspondent account, it's a question of using it. And you're saying basically here that PIB never used correspondent accounts in New York. That's correct, Judge Walker. But they did transact with AGIB, which used foreign accounts in New York, and they knew that AGIB was going to get dollars for them. And knowledge has never been enough, respectfully, either as a matter of 302A1 or as a matter of due process law, foreseeability. Okay, so you recognize that they have knowledge, so then I guess the district court relied on this question of control, right? So can I ask the question that I asked to opposing counsel, which is, so PIB allows its clients to write checks in dollars off of its accounts. The PMA does the netting each day and then determines that PIB owes a debit of $200. So PIB says to AGIB, in order to settle up, transfer $200 to the PMA's correspondent account in New York. Now can AGIB say, no, I'd rather transfer $500, because I think you should pay more? Could they do that? They couldn't, but that doesn't provide... They couldn't, right. So that means that PIB has some control over the transaction, right? It is their money, after all. Respectfully, no. And, you know, I understand that terrorism always brings out these heated questions, but all of these rules have been settled both outside the terrorism context... No, I don't care about terrorism. I'm asking about why... We've just said they need to have... or the New York Court of Appeals has said they just need to have some control. So if AGIB has to follow the specifications of PIB because it's their money, why isn't that some control? Because New York law, both UCC law and this Court's decisions in the broader banking context negate any allegation of control. There are at least four UCC provisions governing banking transactions that say the opposite of your hypothetical, Judge Menasche. So, for example, UCC-4A-302, which obliges, this is your hypothetical, a receiving bank to follow a sender's instructions. However, it is clear that under UCC-4A-212, merely following a sender's instructions does not create an agency relationship. And that is consistent... But, Mr., does the UCC determine the personal jurisdiction analysis? The UCC determines the agency relationship. So, to go back to... Right, but we've said that you don't need to follow the formalities of agency law. We've said that it has to be, the agent has to be acting for the benefit of the principal and there has to be some control. Right, and so this Court in Cutco defined what that level of control is. Well, the reason for the control, correct me if I'm wrong, the reason for the control element is so that the principal will not be held subject to New York jurisdiction when the principal really doesn't care. Well, I think we're talking about control of different things. What control would be required for jurisdiction, right, is control over the in-forum act because that's what the long-arm statute means by an act in the forum, either in person or through the agent. The control that is being hypothesized, Judge Walker, both in your questions and in Judge Minashi's questions, is not control over the in-forum act. That's what's jurisdictionally relevant. Why? If they have control over the transaction, like, let's say they're indifferent as to whether it's in New York, but AGIB says, we're going to do it in New York, and PIB says, well, we don't care if it's in New York, but here's how the transaction should occur, and it's okay if it happens in New York. And then they have control over the transaction and they know that it's in New York. I mean, if we just say there needs to be, it's for PIB's benefit and it's subject to some level of control, why doesn't that meet the requirement? Because control for 302A1 must be control over the in-forum act because that's the definitional requirement of 302A1. And respectfully... But what about Judge Minashi's point that the instructions themselves specify the amount? They don't, and that's a canard that keeps getting repeated on the basis of assumptions. There is no evidence in the record to contradict the affidavits that were put in by PIB that said our instructions did not specify how you would use an intermediary. At most, they specified the ultimate beneficiary or the originator. Okay, so it sounds like you acknowledge that they have some control over the transaction. They can specify the beneficiary, they can specify the amount and all of that, but you're saying as long as they can't require AGIB to do it in New York as opposed to somewhere else, then there's no control. Precisely, and I think I'm not alone in saying that. What if the situation is, as it appears to be in this case, that the only place in the world that AGIB does it is in New York? And so PIB doesn't have to say it must be in New York because there's no other... Just by choosing AGIB, it's going to end up in New York. So then wouldn't that mean that anybody doing this would never be subject to jurisdiction? But if you had a different bank that had an account in New York and one in Canada, then you would be subject to jurisdiction for the exact same thing because you said, well, we prefer the New York account. But those two things are different. They're not different in terms of whether you're transacting business in New York, are they? I think the things really matter because really what we've got here is a theory of jurisdictional imperialism that says jurisdiction follows the dollar. That is clearly not the law of the circuit because this circuit, for good and sufficient reason, has to deal with banking transactions coming through here on a regular basis from overseas. And it involves issues as diverse as can you attach a midstream electronic funds transfer to can you attach an account? And that's why this Court has gone to great pains in the jolting case... Let me just get back. It's not... You're talking about, like, some general... So the statute that we're interpreting is the New York long-arm statute, which says transact any business in New York. And the New York Court of Appeals says that means purposeful availment of the New York marketplace, which is satisfied by purposeful use of a correspondent account. Of its own correspondent account. No, they don't say that. They say purposeful use of a correspondent account. I mean, you're saying the context implies that, but there's a dispute about that. It's not context. Three times... I guess my question is just this. Why... If you know that the correspondent account you're using is in New York, and you control the transaction, and the transaction is done for your benefit, why is that not purposeful? Because of the middle part of your hypothetical judgment, Ashi, does not accord with the facts, which is there is no control over the New York transaction by PIB. The evidence on that is uncontradicted. Control over the New York transaction is entirely in the hands of AGIB. The district court correctly pointed out that AGIB alone, without PIB's say-so, could close its New York accounts, and that negates control. AGIB has total control over it. But it doesn't necessarily have exclusive control. That's more important. No control. So nesting, which keeps getting thrown about here as though it's something exotic, nesting is the acquisition overseas of a service. I go to a bank overseas. I say I want to send a transaction through New York. I don't have any control over the New York account. Rashaid, which Mr. Radin referred to, is an important case in this respect. It says it has to be volitional New York banking activity by the defendant. Rashaid, first of all, says through its own correspondent account, but let's put that aside. There is no ability to veto, to engage in volitional banking activity through a New York account in the hands of PIB. Only AGIB has that veto power. Only AGIB could accept or reject transactions, and that's what Rashaid says. If we go in this direction, because everybody thinks... But isn't that true even if a bank has its own correspondent account in New York? I mean, it has a correspondent account at another institution. The other institution can always say, we're going to close your... we don't want you as a customer anymore. We're going to close your account and not allow you to do any transactions. I mean, that's always possible. No, I don't think that's what the cases are talking about, Judge Banaschi. Respectfully, what the cases are talking about, like Rashaid, is PICTE, which was an overseas bank, had its own New York correspondent account. Rashaid, the New York Court of Appeals, interpreting this very statute, said it's not enough that you have your own correspondent account. You must volitionally accept or reject transactions coming through your account. Right, it's the purposeful use and not the ownership. So that's what we said. But PIB did not have that. That's what we said in Lychee, that the mere maintenance of a correspondent account is not enough for personal jurisdiction. So we say it doesn't matter that you signed the paperwork to open a correspondent account in New York. What matters is the activity that you purposefully engage in through that account. But then by saying that actually the name on the account does matter, aren't we inverting what we said in Lychee? Aren't you raising the thing we said is not important over the thing we said is important? No, quite the opposite. And I think what's important here, because respectfully, I think we're merging two entirely distinct concepts. 302A1 says jurisdiction exists if there's an inform act either in person. That's the question of who owns or controls the account. Then it says, or through an agent. That's the separate agency question which itself has a level of control. I think New York law is quite clear that with respect to prong one, in person, that it must be the foreign bank's own account. And that's because it has consequences for the wider body of banking law where this court has repeatedly held that a correspondent account relationship is not an agency relationship. Plaintiff's theory would throw that out the window. Number two, this court has held, for example, in the export-import bank case that an intermediary bank is not the agent of the originator or beneficiary. Their theory throws that out the window. And thirdly, and most importantly, this court in Calderon, in the terrorism context, said banks that are in a chain of electronic funds transfers are not in an agency relationship. They are at most in a debtor-creditor relationship, which makes perfectly good sense. If I say, please, take this money and relay it down the chain, this circuit's law is very clear that the only relationship is not one of control, it's one of debtor and creditor. And the New York UCC has gone to great pains because of the widespread foreign banking activity in New York to make these rules clear. So your argument is that AGIB is just like somebody effecting a wire transfer, and so therefore isn't an agent, even though I think you acknowledge that PIB was engaging in a transaction with PMA. PIB engaged in a transaction, Judge Menascu. You're just saying it did it through AGIB, and even though it does it through AGIB, AGIB wasn't acting as its agent. That's the argument. AGIB neither controlled AGIB nor its accounts, nor was AGIB its agent. And that seems clear both under the New York UCC. But you don't disagree that if it was doing it through its own correspondent account, if PIB had the correspondent account in New York, then there'd be jurisdiction, right? If PIB had its own, I think that's what Leach says. So it is accomplishing the same thing it would do if it had its own correspondent account, but it's doing it through someone else, but because the level of control is less than sufficient for an agency relationship, there's no jurisdiction. Well, respectfully, I think you pose, but don't answer the question, Your Honor. The question is, under 302... Well, that's what I do. I pose questions. And I'd be delighted to answer it. Either it's in person, and Leach, he says, it's not in person, and Rashid said it's not in person if it's not your own account, or it's through an agent. And an agent requires control over the in-forum transaction, and there is no evidence of control over the in-forum transaction. Control over the in-forum transaction, but you're saying even if you control the transaction, you have to control the forum part of the transaction. Correct, and I think that's quite clear for what 302 says. So you could control the transaction entirely, but unless you dictated the location in which it occurs, no agency relationship. It's not so much an agency relationship. It's both a lack of agency relationship and a lack of activity in person in the forum unless there's control over the in-forum act. And what's interesting, because there's a lot of law from this court, including in Leach, it says there's no daylight between what 302A1 and due process requires. Well, there is daylight now, because when the Supreme Court decided the Ford case and said there's some real teeth to the arising from or related to component of specific jurisdiction, which is what we're talking about here, if there's no activity by PIB in the forum, that even an interpretation of 302A1 that says, okay, we, you know, the slightest breath on New York is enough to create jurisdiction, it wouldn't satisfy due process because it's too tangential. But we don't have to go that far, because 302A1 makes it clear that in person means in person, your own account. Leachie and Rochade tell us that. The New York Court of Appeals told us that. Okay, can I ask you just two other smaller questions? Do you think it's possible that there's jurisdiction for the ALF claims but not the HLF claims? Do they present different issues?  you asked about the checks. The checks on their face. The ALF checks that are attached to the complaint have a stamp on them in Arabic. What do they say? Paid via cash. Those checks were never cleared through the U.S. system. They were paid out at a counter in cash according to what's on their face. They never entered the U.S. system. So if this case were to proceed on the basis of the ALF checks, jurisdiction would inevitably collapse as a factual matter. Well, I mean, they have some examples of checks, but isn't there an inference that there were some checks that went through an interbank system? No, there are not, because... Is that not a plausible inference? No, because the system that they, not only they hypothesized, but on which we provided unrebutted evidence through our own affidavits, is that checks are not cleared through the U.S. system. Checks are cleared by the Palestinian Monetary Authority on a net basis. So when money moves through the United States through the PMA's account... Yeah, I understand. By the end of the day, when the PMA nets out what the different banks owe each other, then there's a transfer that happens through New York correspondent accounts, right? But, yes, the mushed-up nature, if you will, of the netted nature of that transaction means that checks are not, which was the hypothesis of the question, those checks are not cleared through the U.S. system. But the net credits and debits of the checks are cleared in New York. And there's a big difference between net checks and net debits and credits and checks, because, for example, the Federal Reserve Bank of New York acts as a collecting bank for a check. But you're just saying it's possible that any checks would have netted out and they wouldn't have to have actually cleared any transactions in New York, right? Is that your argument? No traceability, because all that the PMA directs is not... the PMA does not collect checks and then transfer them through the U.S. system. The PMA says on a daily basis... I understand the PMA just says, here is the net credits and debits between the Palestinian banks. Right, but then when PIB responds... And then there's a transfer to settle up. When PIB responds to that settle-up direction, what it does is it transacts exclusively with AGIP. It says, AGIP, please remit this much money to PMA's accountant in New York. It doesn't tell AGIP how to do so. Yeah, we talked about that. I think I have that argument. Could I also ask you about the allegations about the overlapping ownership between PIB and AJIB? Yes, thank you for that one. So there's some overlap. Does it make a difference? And why wouldn't that justify some evidentiary inquiry? Because there was evidence, and it was unrebutted on this subject. The affidavit that we put in on this subject rebutted any overlap of control, and there was no evidence to the contrary. We put in two affidavits, both in support of our motion, in support of our reply, that says these are not. It may have had common officers at a couple of points, but not exclusively. It may have had similar shareholders, but they were not related institutions. Certainly nothing in the record suggests any relationship between the two institutions that would give PIB control over AJIB. Wasn't there some entry in the Bankers' Almanac that listed PIB as a related company for AJIB? It was, and that's why we rebutted that by showing that the facts, as they shouldn't be believed, in a statement made by AJIB and not by PIB in the Bankers' Almanac was false, as a matter of fact, and there was no contrary evidence from the plaintiffs on that point. Oh, you're saying the statement in the Bankers' Almanac was false? Yes. But we rebutted it. That it's not related? They're not related in any way? They're not related. This is dealt with in chapter and verse in the record, where we put in an affidavit from Sammy Agbar that rebutted any relationship. So why would AJIB say that? I don't know why, but we're not AJIB, and we don't control them, Your Honor. Well, doesn't that, I mean, doesn't that require, doesn't that justify some kind of inquiry into where the assertion came from? No, it doesn't for this reason primarily, which is the plaintiffs never asked for jurisdictional discovery in the district court. They don't ask for jurisdictional discovery here. This Court's law is pretty clear, like in the Jakubowicz v. State of Israel case. But if you don't ask for jurisdictional discovery, you don't get jurisdictional discovery. Still, the district court said, you know what, I've gone through every hypothesis they've come up with here, and I'm going to entertain the notion on my own. Should I give them jurisdictional discovery? The district court said, no, they don't need it because the facts are undisputed. I am now dealing with legal characterizations of those facts on two points. Is there in-person activity by PIB in the forum? No, because it's not their correspondent account. Did they act through an agent in the forum? No, because adjuncts are not their agents. Yeah, no, I think we have that argument. Okay, so if there, we've taken you past your time. If there are no other questions? The only question I have is the credit report. PIB apparently has a credit report, at least it's alleged in the complaint, Exhibit 4, that it has, says it has close connections with the Yemen-based Arab Jordan Investment Bank. Is that, that's a statement by your own, in your own credit report. Right, what we have done and said in our affidavit is whatever the close connections are, friendship, best friends, whatever you want to call it, that's not enough for control, and that's the legal inquiry. What Cutco said, what this court said in Cutco, is the level of control needs to be similar. Your statement that you have close connections is not false, but the statement from Egypt that they're related is false, but I'm saying the close connections is a legally meaningless concept when the relevant concept legally is control. You can say Yeah, okay, you're just saying it's short of control. I understand, okay. We would respectfully then, Your Honor, ask that the court, for the reasons that are consistent with these four circuit court cases I've mentioned and the UCC, affirm the decision of the district court. Okay, thank you, Mr. Radin. We'll hear back from Mr. Berger on rebuttal. I'm Mr. Radin. Oh, I'm sorry. Thank you, Mr. Berger. We'll hear from Mr. Radin on rebuttal. Just a few quick items. First, as we explained, check settling is required in New York. Otherwise, the check is unwound. A check being paid in cash is how the depositing bank pays it out, but the sending bank, the issuing bank, still has to pay the depositing bank through New York. Otherwise, the depositing bank is being paid. Oh, right, because the cash comes from the bank to which the check is deposited. Right. And so there has to be an interbank transaction that's cleared in advance so that they will pay out the cash. Right, right. I see, okay. On the matter of... I mean, is it possible they cashed it out at the Palestine Investment Bank itself, and so, therefore, there was no interbank transaction that needed to be cleared? Right, so if there was a... ALF's account at PIB and deposited at PIB, then it would clear across PIB's own books. Right. ALF would have to top up its account with cash through New York to PIB, but that one check wouldn't have to settle in New York. Right. That's a choice PIB couldn't make. But we're inferring, your argument is that it's plausible that there was at least one of these checks that was at a different bank. Yes, Your Honor. Okay. As Your Honor noted, the cases that relate to this formal agency relationship are attachment cases, including Calderon Export-Import, and, in fact, Export-Import says not to analogize to that agency principle outside of that UCC provision. Can I just ask you, going back to this question that came up in your initial argument regarding PIB's either knowledge of where the New York transactions would occur and perhaps indifference or not. I mean, if the standard is volitional, is it the case that if PIB is aware that the transactions are going through New York but their purposeful choice is to transact in dollar-denominated U.S. dollars, that's the part that's volitional? How is it volitional that the transaction happened in New York if, in fact, is indifference enough? Is just indifference and knowledge, that counts as purposeful, that counts as a volitional choice to make the transaction in New York? No, it's not indifferent from PIB's position. They know that the system requires them to, for instance, settle the checks in New York. So with that knowledge, they then make the additional choice of whether or not to offer a high-risk customer a checking account. Right, but they're not choosing. I mean, you're saying they're aware that it's going to have to go through New York. Correct. That's something different than saying they are choosing to have this go through New York. They're aware that this is the option. It's going to go through New York. I know that this is going to go through New York. Okay, I'm fine with that. If it didn't go through New York, I'd be fine with that as well, if that's their point of view. So indifference, I mean, you're saying that it's not indifference, but it's not, I don't see the purposeful choice. I mean, it has to, it's, that's part of the reason why the case is talked about. Well, it's volitional in New York so that it's not the fact that, okay, I'm all right with it going through New York. I just, that's the part I'm, I guess I'm... Well, they are directing it through New York. As Judge Garcia said in Al-Rashid, quote, nowhere in the record of Lychee, is there any indication that the defendant, LCB, itself played a role in choosing to use the New York correspondent account? It's, and this is, Al-Rashid makes the same point. It doesn't matter that someone else, in that case, one of the fraudsters, is making the choice to use that account. If you act on it, if you accept the money instead of reject it, which is what happened in Amigo Foods, or if you instruct Egypt to make payment on a New York bank, on the PMA's correspondent bank in New York, then those are all volitional choices. Well, let me get at it a different way. So, we've been talking about the elements of agency for personal jurisdiction purposes, or agent for, you know, under the New York long-arm statute. And we say that the agent has to transact the business for the benefit of the principal and subject to some control. And Mr. Berger said, well, there might have been control over some elements of the transaction, like the amount or the transferee, but you need to have control over the location, because that's the key part of it. Is that right? No. The only choice that Agib, as far as I know, is making is choosing which of its own New York correspondent accounts it'll send an outgoing transfer through. So, PIB is saying, send it to Arab Bank, New York. That's PIB choosing the location, even if it reflects the choice another institution had made before, or a customer had made. As far as I know, PIB doesn't tell Agib, use your Chase account versus your Citi account versus your BNY account. But they're all in New York, so it's an immaterial decision to make. Right, but that's just another way of saying that it was Agib's decision to have correspondent accounts in New York, or to choose the correspondent account in New York that's being used, right? Yeah, Agib could have chosen not to have correspondent accounts in New York, and PIB would have likely gone to someone else for that set of services. So you are saying, I mean, I guess in response to, you know, what Judge Lee was suggesting, you are saying that your argument is that it's enough that PIB knew the transaction was happening in New York, and it happened through Agib for the benefit of PIB, and the transaction was subject to some control by PIB, but it wasn't necessary that the location was a specific part of that control by PIB, is that right? Yes, Your Honor, it happened repeatedly as well. Well, also, they chose Agib, knowing that Agib had accounts in New York. Yes, Your Honor. Not, you know, they didn't choose the accounts, they didn't choose the banks. Right, right, they chose Agib for that purpose, whether it had one or three accounts in New York. That's my time, Your Honor, so I'll stop there. Yes, unless there are other questions. Okay, thank you very much, Mr. Radin. The case is submitted. And because that is the last argued case